**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Professional LED Lighting, Ltd., | ) | |
| | ) | **Case No.** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Aadyn Technology, LLC, | ) | **JURY TRIAL DEMANDED** |
| Frank Gallagher, Marc Kaye, and | ) | |
| Walter Lefler | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Professional LED Lighting, Ltd, by and through its attorneys, for its Complaint

against Defendant Aadyn Technology, Inc., Defendant Frank Gallagher, Defendant Marc Kaye

and Defendant Walter Lefler, alleges and states as follows:

## NATURE OF THE ACTION

1. This is an action for copyright infringement under the Copyright Act of 1976, 17 U.S.C.

   § 101, *et seq.*, breach of contract, unjust enrichment, common law fraud and civil

   conspiracy.

## THE PARTIES

1. Professional LED Lighting, Ltd ("Pro LED" or "Plaintiff") is a company incorporated

   under the laws of the State of Illinois and with a principle place of business in Chicago,

   Illinois within this judicial district.

2. Defendant Aadyn Technology, Inc. ("Aadyn") is a limited liability company organized

   under the laws of the State of Delaware and with a principle place of business in

   Paramus, New Jersey.

3. Defendant Aadyn's primary business activity is designing, engineering, manufacturing and marketing lights and lighting equipment. Aadyn sells and distributes lights and lighting equipment in the Northern District of Illinois, other locations throughout the United States, and other countries.

4. Defendant Frank Gallagher ("Gallagher") is an individual who, on information and belief, resides in Ho-Ho-Kus, New Jersey. Defendant Gallagher is a manager/member of Defendant Aadyn and currently serves as its Chief Executive Officer.

5. Defendant Marc Kaye ("Kaye") is an individual who, on information and belief, resides in Davie, Florida. Defendant Kaye is a manager/member of Defendant Aadyn and currently serves as its Chief Operating Officer.

6. Defendant Walter Lefler ("Lefler"), is an individual who, on information and belief, resides in Rutherford, New Jersey. Defendant Gallagher is a manager/member of Defendant Aadyn, formerly served as its President and currently serves as its Chief Technology Officer.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff's claims arising under the Copyright Act of 1976 ("Copyright Act"), 17 U.S.C. § 101, *et seq.*, pursuant 28 U.S.C § 1331. This Court also has supplemental jurisdiction over all other claims asserted herein pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims brought under the Copyright Act so as to form part of the same case or controversy. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

8. This Court has personal jurisdiction over Defendant Aadyn pursuant 735 ILCS 5/2-209. Defendant Aadyn has sufficient contacts within the state of Illinois so that this forum does not offend the traditional notions of fair play and substantial justice.

9. This Court has personal jurisdiction over Defendant Gallagher pursuant 735 ILCS 5/2-209. Defendant Gallagher has sufficient contacts within the state of Illinois so that this forum does not offend the traditional notions of fair play and substantial justice.

10. This Court has personal jurisdiction over Defendant Kaye pursuant 735 ILCS 5/2-209. Defendant Kaye has sufficient contacts within the state of Illinois so that this forum does not offend the traditional notions of fair play and substantial justice.

11. This Court has personal jurisdiction over Defendant Lefler pursuant 735 ILCS 5/2-209. Defendant Lefler has sufficient contacts within the state of Illinois so that this forum does not offend the traditional notions of fair play and substantial justice.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## **GENERAL ALLEGATIONS**

13. Product Productions, Inc. ("PPI") is company incorporated under the laws of the State of Illinois and with a principle place of business in Chicago, Illinois within this judicial district. PPI offers equipment and services including renting lighting packages and studio facilities. PPI assigned its chose in action to Plaintiff on April 4, 2014. A true and correct copy of the PPI's assignment of its chose in action is attached as Exhibit A.

14. Phil Contursi (hereinafter "Contursi") is a lighting professional with substantial lighting knowledge and experience. Contursi assigned its chose in action to Plaintiff on April 4, 2014. A true and correct copy of Contursi's assignment of his chose in action is attached as Exhibit B.

**Contursi's affiliation with Aadyn**

15. In or about April 2011, Contursi attended the National Association of Broadcasters in Las Vegas, Nevada where he met Kaye and Lefler.

16. In or about May 2011, Kaye and Lefler communicated to Contursi that Aadyn was interested in Contursi's professional experience and substantial knowledge regarding professional lights and lighting equipment. At the time, Aadyn lacked substantial knowledge and experience regarding professional lights and lighting equipment. Aadyn sought to benefit from Contursi's lighting knowledge and experience. Kaye stated many times that Kaye was a toy manufacturer and did not know anything about lighting.

17. Beginning in May 2011, Contursi provided business consultation, advice and assistance regarding professional lights and lighting equipment and marketing and sale of professional lights and lighting equipment.

18. In or about May 2011, Contursi provided business consultation, advice and assistance regarding the ECO 5600 light. As a result thereof, and upon Contursi's business advice and consultation, the name of the light was changed to the Punch 5600 and then to the Punch.

19. In or about June 2011, Contursi provided business consultation, advice and assistance regarding the Punch light. As a result thereof, and upon Contursi's business advice and consultation, the name of the Punch was changed to the Punch Plus.

20. In or about August 2011, Contursi provided business consulting and advice to Aadyn that a smaller light was needed and Aadyn requested Contursi's consultation, advice and assistance regarding the smaller light product.

21. In or about August 2011, at Aadyn's behest, Contursi travelled to the engineering facility of a company called Sturdy Corp located in Wilmington, North Carolina. Sturdy Corp designs, manufactures and distributes mechanical, electrical, electronic, and software products. Contursi worked closely with Sturdy Corp engineers and dealt directly with its president, Dave Sturdy, and head engineer, Tom Carter. Contursi provided consultation, advice and assistance regarding the light via email, over the phone and in person. As a result thereof, upon Contursi's business advice and consultation, the light was named the Jab.

22. In or about August 2011, at Aadyn's behest, Contursi travelled to the manufacturing plant of a company called MCS located in Durham, North Carolina. Contursi provided consultation, advice and assistance regarding the Punch, Punch Plus, and Jab lights. Contursi provided consultation, advice and assistance regarding a monitor tent, a heat shield tent and a lens guard for Aadyn branded products.

23. On or about September 24 through 25, 2011, at Aadyn's behest, Contursi travelled to New York, New York to attend the Cine Gear Expo tradeshow and promote Aadyn branded light products.

24. On or about October 28 through 30, 2011, at Aadyn's behest, Contursi travelled to Orlando, Florida to attend the Live Design International tradeshow and promote Aadyn branded light products. Contursi introduced a man named Frank Gatto to Aadyn and Frank Gatto purchased Aadyn branded products.

25. In or about December 2011, at Aadyn's behest, Contursi travelled to a major motion picture studio facilities in Hollywood, California. Here Contursi promoted Aadyn

branded products and provided consultation, advice and assistance regarding a monitor tent and road cases for Aadyn branded products.

26. In or about January 2012, at Aadyn's behest, Contursi returned to Sturdy Corp to provide consultation, advice and assistance regarding the Jab light.

27. In or about February 2012, Contursi worked with Eileen Healy, a manager at a company called Chimera located in Boulder, Colorado. Chimera designs and manufactures portable lighting products and is known for its portable Lightbank. Through email correspondence, Contursi provided consultation, advice and assistance regarding a Lightbank for Aadyn.

28. In or about March 2012, Aadyn requested Contursi to create a vinyl sign bearing Aadyn's logo for promotional use at tradeshows and events. Contursi had the sign created in Chicago, Illinois at his own expense and the sign was thereafter used at tradeshows and events to promote Aadyn branded products.

29. In or about April 2012, Aadyn requested Contursi to build and design an illuminated light box bearing Aadyn's logo for use at tradeshows and events. Contursi had the light box created by MK Signs in Chicago, Illinois at his own expense and the light box was thereafter used at tradeshows and events to promote Aadyn branded products.

30. On or about April 5 through 13, 2012, at Aadyn's behest, Contursi travelled to Las Vegas, Nevada to attend the National Association of Broadcasters tradeshow and promote Aadyn branded products.

31. In or about May 2012, Contursi provided business consultation, advice and assistance regarding light banks and rings for Aadyn branded light products.

[6]

32. On or about June 12 through 16, 2012, at Aadyn's behest, Contursi travelled to Las Angeles, California to attend the Cine Gear Expo tradeshow and promote Aadyn branded light products.

33. On or about October 18 through 21, 2012, at Aadyn's behest, Contursi travelled to Las Vegas, Nevada to attend the Live Design International tradeshow and promote Aadyn branded light products.

34. In or about October 2012, at Aadyn's behest, Contursi worked closely with SKB, a case manufacturing company dedicated to travel and storage protection needs for light applications, regarding cases for the Jab light. Contursi provided consultation, advice and assistance regarding the light cases for Aadyn branded light products.

35. On or about April 4 through 13, 2013, at Aadyn's behest, Contursi travelled to Las Vegas, Nevada to attend the National Association of Broadcasters tradeshow and promote Aadyn branded light products.

36. On or about May 31 through June 2, 2013, at Aadyn's behest, Contursi travelled to Las Angeles, California to attend the Cine Gear Expo tradeshow and promote Aadyn branded light products.

37. On or about August 13 through 17, 2013, at Aadyn's behest, Contursi attended the Fire-Rescue International event in Chicago, Illinois. At the event, Contursi met with Gallagher and Contursi asked Gallagher when Contursi could expect payment for the business consultation, advice and assistance Contursi had provided for the benefit of Aadyn. Frank replied to Contursi, "When Aadyn turns a profit, those who have worked will get paid."

38. In or about September 10, 2013, Aadyn requested Contursi to build and design Plexiglas tanks with pumps for use at tradeshows and events. Contursi had the Plexiglas tanks

created at his own expense and the light box was thereafter used at tradeshows and events to promote Aadyn branded products.

39. From 2012 through 2013, Aadyn listed Contursi as the only contact for technical support on its website, contursi@aadyntech.com.

40. Aadyn benefited from Contursi's business consultation, advice and assistance regarding professional lights and lighting products and marketing and sale of professional lights and lighting products.

41. Contursi was responsible for contracting the services of Espana Metal Works in California for various products to complement Aadyn branded lights and equipment.

42. Contursi solicited, recruited and contracted numerous dealers and sales representatives in the United States, Canada and Europe to market and sell Aadyn branded products.

43. Contursi incurred travel, lodging and miscellaneous expenses in travelling to various locations, promoting and attending numerous trade shows for the benefit of Aadyn.

44. Aadyn is obligated to compensate Contursi for the business consultation, advice and assistance Contursi provided for the benefit of Aadyn and to reimburse Contursi for his travel, lodging and miscellaneous expenses.

45. Aadyn has failed or refused to compensate Contursi regarding his business consultation, advice and assistance or reimburse expenses.

### Pro LED's and PPI's Independent Contractor Relationships with Aadyn as Dealers and Sales Representatives

46. In or about May 2011, Aadyn and PPI entered into a non-exclusive agreement whereby Aadyn sought the services of PPI as a sales representative for Aadyn branded products. (the "Non-Exclusive Representative Agreement"). The Non-Exclusive Representative Agreement provides that PPI is an independent contractor and not an employee of Aadyn.

The Non-Exclusive Representative Agreement also provides that PPI's sales market territory shall be Illinois, Indiana, Wisconsin, Michigan, Missouri, and Minnesota, that Aadyn shall pay PPI ten-percent (10%) commission for PPI's monthly net sales of Aadyn branded products, and that commissions will be paid the 15th of every month for invoices paid the previous month. A true and correct copy of the Non-Exclusive Representative Agreement is attached as Exhibit C.

47. In or about March 2012, Aadyn and PPI entered an additional agreement which provides PPI the opportunity to market and sell Aadyn branded products to certain accounts outside its sales market territory identified in the Non-Exclusive Representative Agreement in exchange for Aadyn's payment of five-percent (5%) commissions to PPI for such sales. The additional agreement also identified that a non-exclusive dealer agreement will be made for Pro LED. A true and correct copy of the additional agreement is attached as Exhibit D.

48. In or about March 2012, Aadyn and Pro LED entered into a Non-Exclusive Dealership Agreement (the "Non-Exclusive Dealership Agreement"). The Non-Exclusive Dealership Agreement provides that the relationship between the parties is that of vendor and vendee and that Pro LED is not an employee of Aadyn. The Non-Exclusive Dealership Agreement also provides that Pro LED will purchase, inventory, promote and sell Aadyn branded products, and that Pro LED will maintain adequate inventories of Aadyn branded products and will promote the sale thereof in a primary marketing area consisting of Illinois, Indiana, Michigan, Missouri, Minnesota, and Wisconsin. A true and correct copy of the Non-Exclusive Dealership Agreement is attached as Exhibit E.

49. PPI assigned the Non-Exclusive Representative Agreement and additional agreement to Pro LED and Pro LED assigned the Non-Exclusive Dealership Agreement to PPI and, on its website, Aadyn listed Pro LED as a sales representative and PPI as a dealer.

50. Pro LED sold Aadyn branded products and submitted invoices to Aadyn. Aadyn failed to pay Pro LED all commissions Pro LED earned selling Aadyn branded products.

51. In or about November 2013, Aadyn sent written notice to Pro LED terminating the Non-Exclusive Representative Agreement. A true and correct copy of the Aadyn's notice to Pro LED terminating the Non-Exclusive Agreement is attached as Exhibit F.

52. Aadyn removed Pro LED as a listed sales representative from its website; however, Aadyn continues to list PPI as a dealer thereon. A true and correct copy of Aadyn's webpage listing its dealers is attached as Exhibit G.

53. As of the filing of this Complaint, Aadyn has not made full payment to Pro LED for commissions Pro LED has earned in connection with Pro LED's sale of Aadyn branded products and, despite Pro LED's demand to Aadyn for payment, there remains a balance due and owing Pro LED from Aadyn in excess of $50,000.

54. On or about March 5, 2014, Kaye contacted Pro LED regarding commissions Aadyn owes and due to Pro LED in connection with Pro LED's sale of Aadyn brand products and stated that Aadyn had determined it owes Pro LED an amount in excess of $30,000. However, Kaye stated that Aadyn will only pay Pro LED approximately $20,000 in commissions for sale of Aadyn branded products.

**PPI's affiliation with Aadyn regarding audiovisual works**

55. In or about July 2011, Aadyn communicated to PPI that it was interested in having PPI create, direct and produce numerous audiovisual works for use in promoting Aadyn's

lights and lighting equipment and providing information and training regarding use of thereof to Aadyn's potential and current customers.

56. In or about July 2011 through April 2013, PPI spent significant time, labor and expense creating, directing and producing numerous videos, which consist wholly of original material and was and is copyrightable subject matter under the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq.* (the "Videos"). The Videos were completed at various intervals from July 2011 through April 2013 and upon completion were used by Aadyn for promotional, informative and training purposes.

57. Aadyn used and continues to use the Videos for promotional, informative and training purposes on its web properties. Aadyn has commercially benefitted and continues to benefit from its use of the Videos.

58. As of the filing of this Complaint, Aadyn has not compensated PPI for creating, directing and producing the Videos, despite PPI's demand for payment. Aadyn has no ownership interest in the Videos and has not purchased a license or obtained permission from PPI to use the Videos.

59. PPI has applied to the United States Copyright Office to obtain Certificates of Copyright Registration in connection with the Videos. True and correct copy of the applications for Copyright Registration are attached as Exhibit H.

60. On April 3, 2014, PPI sent Aadyn a cease-and-desist notice notifying Aadyn that it is using the Videos for commercial benefit without license or permission from PPI, and demanding Aadyn to cease using and remove the Videos from its web properties. A true and correct copy of cease-and-desist notice dated April 3, 2014 is attached as Exhibit I.

[11]

61. Aadyn has continued to use the Videos without license or permission from PPI and has failed or refused to remove the Videos from its web properties and media outlets.

## COUNT I
### (Fraud against all Defendants)

62. Plaintiff reallages and incorporates by reference paragraphs 1 through 45 of this Complaint as though fully set forth herein.

63. Gallagher, Kaye and Lefler represented to Contursi that he would be compensated for his business advice and consultation and reimbursed for travel, lodging and other miscellaneous expenses.

64. Gallagher, Kaye and Lefler repeatedly represented to Contursi that "those who work will get paid when Aadyn turns a profit" specifically to induce Contursi to provide business advice and consultation for the benefit of Aadyn.

65. In reliance on Gallagher, Kaye and Lefler's representations, Contursi provided business consultation, advice and assistance regarding professional lights and lighting equipment and marketing and selling the same.

66. At all relevant times herein, Gallagher, Kaye and Lefler knew or should have known that their representations regarding compensation to Contursi for business advice and consultation and reimbursement of expenses were false.

67. At all relevant times herein, Gallagher, Kaye and Lefler had no intention of ever compensating Contursi for the business consulting and advice Contursi provided to Aadyn or reimbursing his expenses.

68. On numerous occasions Contursi inquired with Gallagher, Kaye and Lefler as to when compensation and reimbursement would be forthcoming.

69. In response to Contursi's inquiries regarding when compensation and reimbursement would be forthcoming, Gallagher, Kaye and Lefler repeatedly represented to Contursi "those who work will get paid when Aadyn turns a profit" specifically to induce Contursi to continue providing business advice and consultation for the benefit of Aadyn.

70. In reliance on these repeated representations that he would be compensated and that such compensation would be forthcoming, Contursi continued to provide business advice and consultation to Aadyn.

71. Specifically, on or about August 13 through 17, 2013, at the Fire-Rescue International event in Chicago, Illinois, Contursi met with Gallagher and inquired as to when he could expect compensation, Gallagher replied to Contursi, "When Aadyn turns a profit, those who have worked will get paid."

72. Despite having turned a profit, Aadyn has failed to compensate Contursi for services he provided the benefit of Aadyn or reimburse his expenses.

73. As a direct and proximate result of Aadyn's conduct, Contursi has been injured.

WHEREFORE, Plaintiff, Professional LED Lighting, respectfully requests judgment in its favor for compensatory damages, punitive damages, and costs against Aadyn Technology, Frank Gallagher, Marc Kaye and Walter Lefler, while granting all other relief which the Court deems just and equitable.

## COUNT II
### (Civil Conspiracy against all Defendants)

74. Plaintiff reallages and incorporates by reference paragraphs 1 through 45 and 62 through 73 of this Complaint as though fully set forth herein.

75. Upon information and belief, Aadyn, Gallagher, Kaye and Lefler made an agreement to cause injury to Contursi.

76. The scope of the agreement to injure Contursi included inducing Contursi to provide and continue to provide business advice and consultation for the benefit of Aadyn without intending to ever pay Contursi full compensation therefor.

77. Aadyn, Gallagher, Kaye and Lefler repeatedly made representations to Contursi that he would be paid when Aadyn turned a profit, and despite Aadyn having turned a profit, Aadyn has failed to compensate Contursi.

78. The repeated representations, failure and refusal to compensate constitute unlawful overt acts which directly and proximately caused Contursi injury and were carried out in furtherance of the agreement and common scheme to injure Contursi.

WHEREFORE, Plaintiff, Professional LED Lighting, respectfully requests judgment in its favor for compensatory damages, punitive damages, and costs against Aadyn Technology, Frank Gallagher, Marc Kaye and Walter Lefler, while granting all other relief which the Court deems just and equitable.

## COUNT III
### (Unjust Enrichment against Aadyn Technology)

79. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 and 62 through 78 of this Complaint as though fully set forth herein.

80. Contursi provided business consultation, advice and assistance to Aadyn regarding professional lights and lighting products and marketing and sale of professional lights and lighting products and Aadyn has retained the benefit therefrom.

81. As a result of and to the extent of Contursi's business consultation, advice and assistance provided to and for the benefit of Aadyn, Aadyn has been enriched thereby at the expense of Contursi.

[14]

82. Contursi is entitled to the reasonable value of the services he provided for the benefit of Aadyn.

83. Aadyn has failed to compensate Contursi for the reasonable value of the services he provided for the benefit of Aadyn.

84. As a result of and to the extent of Aadyn's failure to compensate Contursi for the reasonable value of the services he provided for the benefit of Aadyn and while retaining the benefits thereof, Aadyn has been unjustly enriched.

WHEREFORE, Plaintiff, Professional LED Lighting, respectfully requests judgment in its favor for compensatory damages and costs against Aadyn Technology, while granting all other relief which the Court deems just and equitable.

### COUNT IV
### (Breach of Contract against Aadyn Technology)

85. Plaintiff realleges and incorporates by reference paragraphs 1 through 14 and 46 through 54 of this Complaint as though fully set forth herein.

86. The Non-Exclusive Agreement is a binding and enforceable contract. The Non-Exclusive Agreement provides in section 19, "In any action to enforce, arising out of, or relating in any way to, any of the provisions of this Agreement, that prevailing party shall, in addition to any other relief, be entitles to recover reasonable attorney's fees and costs."

87. After execution of the Non-Exclusive Agreement, PPI assigned the Non-Exclusive Agreement to Pro LED. In assigning the Non-Exclusive Agreement to Pro LED, PPI assigned all of its rights to receive benefits thereunder and delegated Pro LED to perform its obligations thereunder.

88. Pro LED performed all of its obligations under the Non-Exclusive Agreement and earned commissions in connection with sales made in its market territory.

89. Aadyn has breached the Non-Exclusive Agreement by failing and refusing to pay the full amount of commissions Pro LED earned under the Non-Exclusive Agreement and there remains a balance due and owing Pro LED from Aadyn in excess of $50,000.

90. As a direct and proximate result of Aadyn's breach of the Non-Exclusive Agreement, Pro LED has suffered damages to the extent of unpaid commissions in excess of $50,000.

WHEREFORE, Plaintiff, Professional LED Lighting, respectfully requests judgment in its favor for compensatory damages, reasonable attorney fees and costs against Aadyn Technology, while granting all other relief which the Court deems just and equitable.

## COUNT V
### (Fraud against all Defendants)

91. Plaintiff realleges and incorporates by reference paragraphs 1 through 14 and 55 through 61 of this Complaint as though fully set forth herein.

92. Gallagher, Kaye and Lefler represented to PPI that it would be compensated for creating, directing and producing the Videos.

93. Gallagher, Kaye and Lefler repeatedly represented to PPI that "those who work will get paid when Aadyn turns a profit" specifically to induce PPI to create, direct and produce the Videos.

94. In reliance on Gallagher, Kaye and Lefler's representations, PPI created, directed and produced the Videos.

95. At all relevant times herein, Gallagher, Kaye and Lefler knew or should have known that their representations regarding compensation to PPI for creating, directing and producing the Videos were false.

96. At all relevant times herein, Gallagher, Kaye and Lefler had no intention of ever compensating PPI for creating, directing and producing the Videos.

97. On numerous occasions PPI inquired with Gallagher, Kaye and Lefler as to when compensation would be forthcoming.

98. In response to PPI's inquiries regarding when compensation would be forthcoming, Gallagher, Kaye and Lefler repeatedly represented to PPI that it will be compensated when Aadyn turns a profit specifically to induce PPI to continue creating, directing and producing the Videos.

99. In reliance on these repeated representations that it would be compensated and that such compensation would be forthcoming, PPI continued to create, direct and produce the Videos, which Aadyn continued to accept and use for its benefit.

100. Despite having turned a profit, Aadyn has failed to compensate PPI for creating, directing and producing the Videos for the benefit of Aadyn.

101. As a direct and proximate result of Aadyn's conduct, PPI has been injured.

WHEREFORE, Plaintiff, Professional LED Lighting, respectfully requests judgment in its favor for compensatory damages, punitive damages, and costs against Aadyn Technology, Frank Gallagher, Marc Kaye and Walter Lefler, while granting all other relief which the Court deems just and equitable.

## COUNT VI
### (Civil Conspiracy against all Defendants)

102. Plaintiff reallages and incorporates by reference paragraphs 1 through 14, 55 through 61 and 91 through 101 of this Complaint as though fully set forth herein.

103. Upon information and belief, Aadyn, Gallagher, Kaye and Lefler made an agreement to cause injury to PPI

104.     The scope of the agreement to injure PPI included inducing PPI to create, direct and produce the Videos for the benefit of Aadyn without intending to ever pay compensation therefor.

105.     Aadyn, Gallagher, Kaye and Lefler repeatedly made representations to PPI that it would be compensated when Aadyn turned a profit, and despite Aadyn having turned a profit, Aadyn has failed to compensate PPI for creating, directing and producing the Videos for the benefit of Aadyn.

106.     The repeated representations, failure and refusal to pay full compensation constitute unlawful overt acts which directly and proximately caused PPI injury and were carried out in furtherance of the agreement and common scheme to injure PPI.

WHEREFORE, Plaintiff, Professional LED Lighting, respectfully requests judgment in its favor for compensatory damages, punitive damages, and costs against Aadyn Technology, Frank Gallagher, Marc Kaye and Walter Lefler, while granting all other relief which the Court deems just and equitable.

## COUNT VII
### (Unjust Enrichment against Aadyn Technology)

107.     Plaintiff reallages and incorporates by reference paragraphs 1 through 14, 55 through 61 and 91 through 106 of this Complaint as though fully set forth herein.

108.     PPI created, directed and produced the Videos for the benefit of Aadyn and Aadyn has retained the benefit from use of the Videos for training, informative, promotional and commercial purposes.

109.     As a result of and to the extent of PPI's time, labor and expense in creating, directing and producing the Videos, Aadyn has been enriched thereby at the expense of PPI.

110.    PPI is entitled to the reasonable value its time, labor and expense in creating, directing and producing the Videos for the benefit of Aadyn.

111.    Aadyn has failed to compensate PPI for the reasonable value of PPI's time, labor and expense in creating, directing and producing the Videos for the benefit of Aadyn.

112.    As a result of and to the extent of Aadyn's failure to compensate PPI for the reasonable value of PPI's time, labor and expense in creating, directing and producing the Videos for the benefit of Aadyn, while retaining the benefits thereof, Aadyn has been unjustly enriched.

WHEREFORE, Plaintiff, Professional LED Lighting, respectfully requests judgment in its favor for compensatory damages and costs against Aadyn Technology, while granting all other relief which the Court deems just and equitable.

## COUNT VIII
### (Copyright Infringement against all Defendants)

113.    Plaintiff reallages and incorporates by reference paragraphs 1 through 14, 55 through 61 and 91 through 112 of this Complaint as though fully set forth herein.

114.    The Videos are original works of authorship and comprise copyrightable subject matter under the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq.*

115.    PPI has complied in all respects with all laws governing copyright and has applied to the United States Copyright Office to obtain a Certificate of Copyright Registration for the Videos. (Ex. H).

116.    As the owner of the copyrights in the Videos, PPI enjoys the exclusive right to, among other things, publish the Videos, reproduce the Videos, prepare derivative works based on the Videos, and distribute copies of the Videos.

117.    Aadyn has no rights in the copyrighted Videos.

[19]

118.     Aadyn has infringed and continues to infringe said copyright, by using and causing the Videos to be displayed on its web properties.

119.     Gallagher, Kaye and Lefler are members, officers or agents of Aadyn with primary responsibility for operation and management of Aadyn and each has a direct financial interest in Aadyn.

120.     Gallagher, Kaye and Lefler each have the right and ability to supervise the activities of Aadyn.

121.     At all times relevant hereto, Gallagher, Kaye and Lefler knew or had reason to know of the existence of PPI's exclusive rights in and to the copyrighted Videos and Aadyn's infringing activity.

122.     With knowledge of the infringing activity, Gallagher, Kaye and Lefler induced, caused and materially contributed to the infringing conduct of Aadyn, its employees, independent contractors and customers.

123.     On April 3, 2014, PPI sent Aadyn a cease-and-desist notice pursuant stating that Aadyn is using the Videos for commercial benefit without license or permission from PPI, and demanding Aadyn to cease using and remove the Videos from its webpage and social media outlets. (Ex. I).

124.     Aadyn, Gallagher, Kaye and Lefler are wilful infringers of PPI's copyright.

125.     Unless enjoined by this Court, Aadyn will continue to infringe PPI's copyright.

126.     PPI has been or is likely to be damaged by the act of Aadyn.

WHEREFORE, Plaintiff, Professional LED Lighting, respectfully requests judgment in its favor and against Defendants for actual or statutory damages, pursuant 17 U.S.C. § 504(a)-(c), for costs against Defendants, including reasonable attorneys' fees, pursuant 17 U.S.C. § 505, and

[20]

enjoining and refraining Defendants, their agents, servants, employees, and all persons acting

under their permission and authority, from infringing, in any manner, the copyrighted Videos,

pursuant 17 U.S.C. § 502, while granting all other relief which the Court deems just and

equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff, Professional LED Lighting, respectfully

demands a trial by jury of all issues triable by a jury in its Complaint.


Dated: April 4, 2014                                    Respectfully submitted,

                                                        **Professional LED Lighting, Ltd.**

                                                        By: /s/ William Delaney
                                                        One of its Attorneys

DELANEY LAW, PC
444 N. Wabash Ave, Ste 300
Chicago, Illinois 60611
(312) 276-0263