**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PROFESSIONAL LED LIGHTING, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  14-cv-2440 |
| | ) | |
| AADYN TECHNOLOGY, LLC, | ) | |
| FRANK GALLAGHER, | ) | |
| MARC KAYE, and WALTER LEFLER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendants' Aadyn Technology, LLC ("Aadyn" or "Defendant Aadyn"), Frank Gallagher, Marc Kaye, and Walter Lefler (collectively, "Defendants"), motion to dismiss.  For the following reasons, the Court grants in part and denies in part Defendants' motion, and orders the transfer of this case in its entirety to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) as to the state law claims and either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406 as to the copyright infringement claim.

## BACKGROUND

Plaintiff Professional LED Lighting Ltd., ("LED" or "Plaintiff LED") has filed a complaint alleging (1) fraud and civil conspiracy against all Defendants based on interactions between Defendants and Phil Contursi ("Contursi");[1] (2) unjust enrichment against Aadyn based on interactions between Aadyn and Contursi; (3) breach of contract against Aadyn based on

---

[1] LED alleges that Contursi assigned his chose in action to LED on April 4, 2014.  (*See* R.1-1, Contursi's Assignment of Chose in Action, attached as Ex. B to LED's Compl, ¶ 14.)

interactions between Aadyn and Product Productions, Inc. ("PPI");[2] (4) fraud and civil

conspiracy against all Defendants based on interactions between Defendants and PPI; (5) unjust

enrichment against Aadyn based on interactions between Aadyn and PPI; and (6) copyright

infringement against all Defendants based on PPI's copyright.  (*See generally* R.1, Plaintiff

LED's Complaint.)

Defendants move to dismiss LED's complaint on several bases.  Defendants move under

Rule 12(b)(3) for the Court to dismiss the action for improper venue or transfer any remaining

claims to the Southern District of Florida.  (*See* Fed. R. Civ. P. 12(b)(3); R.12, Defs.' Motion to

Dismiss, at 18-19.)  Defendants also move under Rule 12(b)(6) as to LED's claims directed to

copyright infringement (Count VIII), civil conspiracy (Counts II and VI), and fraud (Counts I

and V).  (*See* Fed. R. Civ. P. 12(b)(6); R.12, at 6; *see also* R.1, Compl. ¶¶ 62-78, 91-106, and

113-126.)  Defendants further move under Rule 12(b)(1) to dismiss LED's non-copyright claims

(Counts I-VII) and Rule 12(b)(2) to dismiss the Individual Defendants from this suit.  (*See* Fed.

R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(2); R.12, at 6; *see also* R.1, ¶¶ 62-112.)

## I.    The Parties' Relationship

LED alleges that Contursi and PPI both have affiliations with Defendants stemming from

their work in the lighting industry.[3]  Contursi first met Defendants Lefler and Kaye in the spring

of 2011 at a National Association of Broadcasters in Las Vegas, Nevada.  (R.1, ¶ 15.)  Defendant

Lefler is a "manager/member of Defendant Aadyn, formerly served as its President and currently

---

[2] LED also alleges that PPI assigned its "chose in action" to LED on April 4, 2014.  (*See* R.1-2, PPI's Assignment of Chose in Action, attached as Ex. A to LED's Compl, ¶ 13.)

[3] The facts presented in the Background are taken from the complaint and are presumed true for the purpose of resolving the pending motion.  *See Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002).  The Court also considers declarations outside of the pleadings submitted by Defendants challenging personal jurisdiction (*see Purdue Research Found. V. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) and venue (*see Auto Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, F.3d 740, 746 (7th Cir. 2007).

serves as its Chief Technology Officer," (*Id.*, ¶ 6) and Defendant Kaye is a "manager/member of Defendant Aadyn and currently serves as its Chief Operating Officer." (R.1, ¶ 5.) Contursi had professional experience and substantial knowledge regarding professional lights and lighting equipment that Aadyn seemed to value as it communicated its interest in working with Contursi and sought to benefit from his knowledge and experience. (*Id.*, ¶ 16.)

Contursi began providing business consultation, advice, and assistance on various lights produced by Aadyn in May of 2011, e.g., the ECO 5600 light (name changed to the Punch 5600) and the Punch light (name changed to the Punch Plus). (*Id.*, ¶¶ 18-19.) In the fall of 2011, Contursi advised Aadyn that it needed a smaller light and, at Aadyn's request, Contursi began working with Sturdy Corp – an engineering facility in North Carolina – to design the new smaller light, named Jab. (*Id.*, ¶¶ 20-21.) Contursi also worked with MCS – a manufacturing plant in North Carolina—to develop a monitor tent, a heat shield tent, and a lens guard for Aadyn branded products (namely the Punch, Punch Plus, and Jab lights). (*Id.*, ¶ 22.) In addition, Contursi worked with Chimera – a company in Boulder, Colorado that designs and manufactures portable lighting products – to develop a Lightbank for Aadyn. (*Id.*, ¶ 27.) Aadyn requested that Contursi create promotional materials to use at tradeshows and events, and Contursi had vinyl signs, an illuminated light box, and Plexiglas tanks with pumps created at his own expense. (*See id.*, ¶¶ 28-29, 38.)

Over the course of at least two years (from 2011-2013), Contursi travelled, upon Aadyn's request, to various industry conferences in New York, Orlando, Hollywood, Las Vegas, Los Angeles, and Chicago to promote Aadyn's branded products. (*See* R.1, ¶¶ 23-25, 30, 32, 33, 35-37.) The only technical support contact on Aadyn's website was Contursi (contursi@aadyntech.com). (*Id.*, ¶ 39.) Contrusi introduced Aadyn to customers who later

purchased Aadyn's branded products and he solicited, recruited, and contracted numerous dealers and sales representatives in the United States, Canada and Europe to market and sell Aadyn's branded products. (*See id.*, ¶¶ 24, 42.) Contursi incurred travel, lodging and miscellaneous expenses in travelling to various locations, promotion and attending numerous trade shows for Aadyn. (R.1, ¶ 43.)

While working with Contursi, Aadyn also shared its interest in having PPI[4] create, direct and produce numerous audiovisual works (the "PPI Videos") for use in promoting Aadyn's lights and lighting equipment and providing information and training to customers. (*Id.*, ¶ 55.) PPI spent time, labor and expense to create, direct and produce numerous PPI videos used by Aadyn for promotional, informative, and training purposes. (*Id.*, ¶¶ 56-57.)

## II.    The Forum Selection Clause And Governing Law Provisions of the Parties' Agreements

Plaintiff LED's complaint references three agreements, one between Defendants and Plaintiff LED (later assigned to PPI), and the other two between Defendants and Contursi and/or PPI (later assigned to Plaintiff LED). (*See* R.1, ¶¶ 46-49.) These agreements are each discussed below.

### A.  The Non-Exclusive Representative Agreement

Shortly after meeting Defendants Kaye and Lefler, Contursi (on behalf of PPI) and Defendant Kaye (on behalf of Aadyn) signed a non-exclusive agreement whereby Aadyn sought the services of PPI as an independent contractor and sales representative for Aadyn branded products (the "Non-Exclusive Representative Agreement"). (*Id.*, ¶ 46; *see also* R.1-3, Non-Exclusive Representative Agreement, attached to Compl. as Ex. C, ¶ 46.) PPI's sales

---

[4] Contursi is the Founder of PPI. (*See* R.1-3, at 3, Non-Exclusive Representative Agreement, attached to Compl. as Ex. C, ¶ 46.)

market territory under the Non-Exclusive Representative Agreement was Illinois, Indiana, Wisconsin, Michigan, Missouri, and Minnesota.  (R.1, ¶ 46.)  Per the agreement, Aadyn pays 10% commission for PPI's monthly net sales of Aadyn branded products from the previous month's paid invoices.  (*Id.*)  The Non-Exclusive Representative Agreement contains a forum selection clause, which states:

> This Agreement is made and executed in the State of Florida and shall be construed under the laws thereof.  The Courts of Broward County Florida shall have exclusive jurisdiction of any matter regarding this Contract or the relationship of the parties.

(R.1-3, at 3, ¶ 18.)  The Non-Exclusive Representative Agreement was signed by Defendant Kaye as CFO/EVP for Defendant Aadyn and by Contursi as Founder for PPI.  (*See* R.1-3, at 3.) PPI later assigned the Non-Exclusive Representative Agreement to Plaintiff LED.  (R.1, ¶ 49.)

## B.  The Non-Exclusive Dealership Agreement

Aadyn and Plaintiff LED also entered into a non-exclusive dealer agreement setting up a vendor/vendee relationship in the spring of 2012 (the "Non-Exclusive Dealership Agreement"). (*See* R.1, ¶ 48; *see also* R.1-5, Non-Exclusive Dealership Agreement, attached to Compl. as Ex. E, ¶ 48.)  The Non-Exclusive Dealership Agreement provided that Plaintiff LED would purchase, inventory, promote, and sell Aadyn branded products.  (R.1, ¶ 48.)  The primary marketing area for the Non-Exclusive Dealership Agreement consisted of Illinois, Indiana, Michigan, Missouri, Minnesota, and Wisconsin.  (*Id.*)  The Non-Exclusive Dealership Agreement contains a "Governing Law" provision, which states: "[t]his Agreement shall be construed and enforced in accordance with the laws of the state of Florida."  (R.1-5, at 5, ¶ 23.) Plaintiff LED assigned the Non-Exclusive Dealership Agreement to PPI.  (*Id.*, ¶ 49.)

### C. The Additional Rep/Dealer Agreement

Contursi entered into an additional agreement with Aadyn in March of 2012, entitled "Contursi Client List and Agreement," (the "Additional Rep/Dealer Agreement"). (R.1, ¶ 47; *see also* R.1-4, Additional Rep/Dealer Agreement, attached to Compl. as Ex. D, ¶ 47.) The Additional Rep/Dealer Agreement expanded PPI's sales market territory in exchange for Aadyn's payment of 5% commissions to PPI for related sales and mandated that all sales go through an Aadyn authorized dealer. (*See* R.1-4, at 1.) Contursi and Defendant Aadyn signed the Additional Rep/Dealer Agreement, which thanks and acknowledges Contursi for all his valuable work. (*See id.*, at 3, "Thanking you for all your valuable work.") The Additional Rep/Dealer Agreement does not contain a forum selection clause, but does contain a choice of law provision stating "[a]ny disputes to this agreement will be determined by AAdyn Technology LLC, and the governing law shall be construed and enforced in accordance with the laws of the state of Florida." (R.1-4, at 2.) As it did with the Non-Exclusive Representative Agreement, PPI later assigned the Additional Rep/Dealer Agreement to Plaintiff LED. (R.1, ¶ 49.)

### III. The Dispute

Defendants have not paid Contursi for his business consultation, advice, and assistance, nor have they reimbursed Contursi for his travel, lodging, and miscellaneous expenses. (R.1, ¶¶ 44-45.) In August of 2013, while attending the Fire-Rescue International event in Chicago, Illinois, Contursi met Defendant Gallagher, Aadyn's Chief Executive Officer, and inquired as to when he could expect payment, to which Defendant Gallagher replied "[w]hen Aadyn turns a profit, those who have worked will get paid." (R.1, ¶¶ 4, 37.) Despite the fact that Plaintiff LED sold Aadyn branded products and submitted invoices to Aadyn, Defendants failed to pay Plaintiff LED for all commissions earned. (*Id.*, ¶ 50.) In November of 2013, Aadyn sent Plaintiff LED

written notice terminating the Non-Exclusive Representative Agreement. (*Id.*, ¶ 51; *see also* R.1-6, Termination Letter, attached to Compl. as Ex. F, ¶ 51.) Aadyn removed Plaintiff LED as a listed sales representative from its website and at least two days prior to Plaintiff LED filing its complaint, Aadyn listed PPI as a dealer on its website. (R.1, ¶ 52.) Although Aadyn has stated it will only pay approximately $20,000 in commissions for Plaintiff LED's sales, Aadyn has failed or refused to pay Plaintiff LED its full payment of commissions earned, which is in excess of $50,000. (*Id.*, ¶¶ 53-54.)

Aadyn also has not removed the PPI Videos from its web properties and media outlets and has not compensated PPI for creating, directing, and producing the PPI Videos. (*Id.*, ¶¶ 57-58.) PPI filed for copyright protection of the PPI Videos just prior to filing this lawsuit. (*Id.*, ¶ 59; *see also* R.1-8, Copyright Registration Applications, attached to Compl. as Ex. H, ¶ 59.) Aadyn has not purchased a license or obtained permission from PPI to use the PPI Videos. (*Id.*, ¶¶ 58, 61.) PPI sent a cease-and-desist letter to Aadyn regarding its use of the PPI Videos. (*Id.*, ¶ 60; *see also* R.1-9, Cease-and-Desist Letter, attached to Compl. as Ex. I, ¶ 60.)

Plaintiff LED filed its complaint in April of 2014 for fraud, civil conspiracy, unjust enrichment, breach of contract, and copyright infringement. (*See generally* R.1.) Defendants move to dismiss LED's complaint on several bases, including for dismissal under Rule 12(b)(3) for improper venue based on the forum selection clause and for transfer to the Southern District of Florida. (*See* Fed. R. Civ. P. 12(b)(3); R.12, at 18-19 ("the Court should enforce the mandatory forum selection clause which appears in the Sales Representative Agreement that forms the basis of LED's complaint and transfer any remaining portions of LED's complaint to

the Southern District of Florida").)  The Court grants in part and denies in part Defendants'

motion, and transfers this case to the Southern District of Florida for the reasons stated below.[5]

## LEGAL STANDARD

In deciding a motion to dismiss for improper venue under Federal Rule of Civil

Procedure 12(b)(3), all allegations are taken as true, unless contradicted by the defendants'

affidavits and the court may consider facts outside the pleadings.  *See Faulkenberg v. CB Tax*

*Franchise Sys., LP,* 637 F.3d 801, 806 (7th Cir 2011).  Any conflicts in the affidavits regarding

relevant facts must be resolved in plaintiff's favor.  *See Purdue Research Found. v.*

*Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  The Seventh Circuit has cautioned

that "once the defendant has submitted affidavits or other evidence in opposition to the exercise

of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence

supporting the exercise of jurisdiction."  *Id.* at 783; *see also Faulkenberg,* 637 F.3d at 806

(noting that the same standards apply to improper venue as do a Rule 12(b)(2) dismissal).  *Id.*

Defendants' motion seeks enforcement of the forum selection clause in the

Non-Exclusive Representative Agreement.  The proper procedure for enforcement of a valid

forum selection clause and transfer of a case depends on whether the venue in which plaintiff

filed its complaint is proper.  *See Atlantic Marine Const. Co., Inc. v. United States Dist. Court*

*for the Western Dist. of Tex.*, ____ U.S. ____, 134 S.Ct. 568, 579, 187 L.Ed.2d 487 (2013).  If

venue is proper, a valid forum selection clause that points to a federal district is enforced

pursuant to 28 U.S.C. § 1404(a).  *See id.*, 134 S.Ct. at 575; *see also In re LimitNone, LLC*, 551

---

[5] The Seventh Circuit has held that a district court does "not act outside of its authority" when it considers a transfer request or an issue of venue prior to subject-matter jurisdiction.  *See In re LimitNone*, 551, F.3d 572, 578 (7th Cir. 2008); *see also Sinochem Int'l Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (holding that a court is not required to determine subject matter jurisdiction before ordering a case transferred for the convenience of parties and witnesses, because such a transfer is not a ruling on the merits).

F.3d 572, 575-76 (7th Cir. 2008) ("[b]ecause the Northern District of Illinois was not an improper venue, § 1404(a), rather than § 1406(a) provided the authority for the transfer order"). If venue is improper, a valid forum selection clause is enforced by either a dismissal under Rule 12(b)(3) and/or a transfer under 28 U.S.C. § 1406. *See Atlantic Marine*, 134 S.Ct. at 575; *In re LimitNone*, 551 F.3d at 575. The Court turns first to the validity and scope of the forum selection clause, followed by a determination of whether the current forum in the Northern District of Illinois is a proper venue for Plaintiff's claims and whether a transfer is warranted in this case.

**ANALYSIS**

**I.    Validity and Scope of the Forum Selection Clause**

The forum selection clause at issue is found in the Non-Exclusive Representative Agreement entered into by Defendant Aadyn and PPI. (*See* R.1-3, at 3.) The Non-Exclusive Representative Agreement is also at the heart of Plaintiff LED's breach of contract claim and is alleged by Plaintiff LED as "a binding and enforceable contract." (R.1, ¶ 86.) The forum selection clause contained in the Non-Exclusive Representative Agreement states:

> This Agreement is made and executed in the State of Florida and shall be construed under the laws thereof. The Courts of Broward County Florida shall have exclusive jurisdiction of any matter regarding this Contract or the relationship of the parties.

(R.1-3, at 3, ¶ 18.)

**A.  The Forum Selection Clause is Valid and Mandatory**

Defendants seek to enforce the clause as the basis for transferring any remaining claims to the Southern District of Florida. (*See* R.12 at 18-19; R.19, Defs.' Reply in Support of Defs.' Motion to Dismiss, at 13-14.) Plaintiff LED admits that the Non-Exclusive Representative Agreement is a "binding and enforceable contract" but argues that it (1) "should not be enforced

at all because it is "so gravely difficult and inconvenient to *both* parties," and (2) that if the clause has any bearing, "it is limited to LED's claim for breach of contract." (R.18, Pltf. LED's Opposition to Defs.' Motion to Dismiss, at 15 (emphasis in original).) Because the Non-Exclusive Representative Agreement also includes a choice of law provision, the Court looks to Florida law for determining the forum selection clause's meaning. *See Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007) ("Simplicity argues for determining the validity and meaning of a forum selection clause, in a case in which interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears").

Plaintiff LED's first argument goes to the validity of a forum selection clause. A forum selection clause is "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Faur v. Siruis Int'l Ins. Corp.*, 391 F.Supp.2d 650, 657 (N.D. Ill. 2005) (citing *Bonny v. The Soc'y of Lloyd's*, 3 F.3d 156, 159 (7th Cir. 1993); *see also Rucker v. Oasis Legal Fin., LLC*, 632 F.3d 1231, 1236 (11th Cir. 2011); *Leslie v. Carnival Corp.* 22 So. 3d 567, 576 (Fla. Dist. Ct. App. 2009). The Supreme Court provides that a forum selection clause is unenforceable when: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *see also Faur*, 391 F.Supp.2d at 657; *Bonny*, 3 F.3d at 159; *Rucker*, 632 F.3d at 1236; *Leslie*, 22 So. 3d at 576 (referencing the second factor of *Bremen*).

Here, Plaintiff argues only the second *Bremen* factor, alleging that enforcement of the forum selection clause in this case would be gravely difficult and inconvenient for both parties. Plaintiff LED's argument fails, however, because Defendant Kaye is a Florida resident (R.1, ¶ 5; R.12-2, Kaye Affidavit, ¶ 3) and Defendants advocate for enforcement of the clause which speaks against any inconvenience to them. Further, any inconvenience to Plaintiff LED was foreseeable at the time it (or Contursi or PPI) agreed to the contract containing the clause. *See Schwarz v. Sellers Markets, Inc.*, 812 F.Supp.2d 932, 938 (N.D. Ill. 2011) (citing *AAR Int'l Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 (7th Cir. 2001)); *see also Rucker*, 632 F.3d at 1237; *Corsec, S.L. v. VMC Int'l Franchising, LLC*, 909 So. 2d 945, 947 (Fla. Dist. Ct. App. 2005) (quoting *M/S Bremen*, 407 U.S. at 17-18). The forum selection clause is, therefore, valid and enforceable. *Id.*

The forum selection clause is also mandatory. A forum selection clause is mandatory where its "language is obligatory" and "clearly manifests an intent to make venue compulsory and exclusive." *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 756 (7th Cir. 1992). The forum selection clause here provides that "the Courts of Broward County, Florida *shall* have *exclusive* jurisdiction of *any* matter regarding this Contract *or the relationship of the parties*." (R.1-3, at 3, ¶ 18 (emphasis added).) The use of "exclusive jurisdiction" in a particular forum shows that the parties intended to also make venue exclusive. *See Schwarz*, 812 F.Supp.2d at 936 (citing *Piechur v. Redbox Automated Retail, LLC*, No. 09-CV-984-JPG, 2010 WL 706047, at *3 (S.D. Ill. Feb. 24, 2010) ("[b]y agreeing to submit to the 'exclusive jurisdiction' in a particular forum, the parties in this case have manifested their intent to make that venue exclusive and to exclude venue in all other jurisdictions")). This is especially true

when the additional term "shall" and "any matter" are used in the clause, further indicating that the selected forum is exclusive. *See Paper Express, Ltd.*, 972 F.2d at 756.

Aligning with the Seventh Circuit, the Eleventh Circuit and Florida law also find the use of "shall" and "exclusive jurisdiction" indicative of a mandatory forum selection clause. *See Krenkel v. Kerzner Int'l Hotels Ltd.,* 579 F.3d 1279, 1281 (11th Cir. 2009) (finding forum selection clause with mandatory language valid and enforceable); *Barilotti v. Island Hotel Co.,* No. 13-23672-CIV, 2014 WL 1803374, at *4 (S.D. Fl. May 6, 2014) (use of "shall" and "exclusive" indicate mandatory); *cf. Creative Tile Mktg., Inc. v. SICIS Int'l, S.r.L.*, 922 F.Supp. 1534, 1538 (S.D. Fl. 1996) (finding a forum selection clause permissive because it failed to use "exclusive jurisdiction"); *Celistics, LLC v. Gonzalez*, 22 So. 3d 824, 826 (Fla. Dist. Ct. App. 2009) (finding a forum selection clause was not mandatory because it "does not use the 'magic words' 'shall' or 'must,' or other words or phrases, such as … 'exclusively,' … which generally are words of exclusivity").

The Court, therefore, finds the forum selection clause in the Non-Exclusive Representative Agreement valid and mandatory. The Court now turns to the clause's scope.

### B. Plaintiff's Claims Fall Within the Scope of the Forum Selection Clause

Courts construe forum selection clauses broadly. Indeed, they can cover claims in addition to a breach of the contract in which they are contained. *See XADO Tech., LLC v. U.S. Envirotech, Inc.*, No. 13 C 6901, 2014 WL 3882667, at *3 (N.D. Ill. Aug. 5, 2014) (quoting *Am. Patriot Ins. Agency v. Mut. Risk Mgmt.*, 364 F.3d 884, 889 (7th Cir. 2004) ("A dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges fraudulent breach or fraudulent inducement or fraudulent performance"); *see also Bailey v. ERG Enters., LP,* 705 F.3d 1311, 1318 (11th Cir. 2013) (explaining that claims

that have a direct relation to the contract containing the forum selection clause fall within its scope); *Am. Boxing & Athletic Assn. Inc. v. Young*, 911 So. 2d 862, 865 (Fla. Dist. Ct. App. 2005) (finding a forum selection clause relating to "any action or claim between the parties" to be broad enough to encompass plaintiff's tort claims). When a relationship between parties is contractual, the pleading of non-contractual claims may not prevent the enforcement of the forum selection clause.

Here, Plaintiff alleges breach of the Non-Exclusive Representative Agreement which contains the forum selection clause. (*See* R.1, ¶¶ 85-90 (Count IV).) In addition to breach of contract, Plaintiff alleges fraud, civil conspiracy, unjust enrichment, and copyright infringement. (*See generally* R.1.) Plaintiff's claims are all rooted in the same facts surrounding the contractual allegations. The allegations surround Contursi's and PPI's reliance on Defendants' alleged misrepresentations regarding payment for Contursi's business consultation, advice, and assistance and for PPI's services regarding professional lights and lighting equipment. (*Id.*) Plaintiff LED's complaint stems from Aadyn's failure to compensate Plaintiff LED, Contursi, and PPI for their collective work and efforts surrounding promoting Aadyn's branded products. Plaintiff alleges Defendants failure to compensate Contursi for services he provided to Aadyn and failure to reimburse his expenses. (*See* R.1, ¶¶ 62-84 (Counts I, II and III).) Plaintiff also alleges Defendants failure to pay PPI for its creation, direction and production of the PPI Videos. (*See* R.1, ¶¶ 91-112 (Counts V, VI, and VII).) Plaintiff alleges Defendants' continued use of the PPI videos, made at Aadyn's request (*see id.*, ¶¶ 55, 118) and for which PPI has now applied for copyright registration (*see id.*, ¶ 115), as a basis for its copyright infringement claim. (*See id.*, ¶¶ 113-126 (Count VIII).) Plaintiff further alleges Defendants' failure to fully compensate Plaintiff LED for its earned commissions. (*See id.*, ¶¶ 53-54.)

The additional agreements referenced in Plaintiff's complaint all intertwine with the Non-Exclusive Representative Agreement, the original agreement between Contursi (signed on behalf of PPI) and Aadyn. (*See id.*, ¶¶ 46, 49; *see also* R.1-3.) The agreements are all connected as the Additional Rep/Dealer Agreement refers back to the original Non-Exclusive Representative Agreement and contemplates the creation of the Non-Exclusive Dealership Agreement. (*See* R.1, ¶ 47; *see also* R.1-4 at 1 (providing "PPI the opportunity to market and sell Aadyn branded product to certain account outside its sales market territory identified in the Non-Exclusive Representative Agreement …" and further providing "that a Non Exclusive Dealer Agreement will be made for [Plaintiff LED]").)

The forum selection clause is broadly worded as applicable not only to "any matter" regarding the Non-Exclusive Representative Agreement, but also generally applicable "to the relationship between the parties." (*See* R.1-3, at 3, ¶ 18 (providing "the Courts of Broward County, Florida shall have exclusive jurisdiction of *any matter* regarding this Contract *or the relationship of the parties*") (emphasis added).) This broad language casts a wide net for disputes not only stemming from the contract in which the clause is contained, but also for disputes related to the parties' relationship generally. *See AT&T Capital Servs., Inc. v. Shore Financial Servs., Inc.*, No. 09 CV 1360, 2010 WL 2649874, at * 8 (N.D. Ill. June 30, 2010) (finding a forum selection clause stating "any transaction contemplated by" or "relating to" the agreement to cover Plaintiff's claims arising under performance of the agreement); *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (plaintiffs' claims arise from a contractual relationship and are therefore within the scope of the forum selection clause); *see also Bailey,* 705 F.3d at 1318 (11th Cir. 2013); *Am. Boxing*, 911 So. 2d at 865.

As such, the forum selection clause applies to all of Plaintiff's claims. Plaintiff LED's copyright infringement claim is also directly related to the Non-Exclusive Representative Agreement as PPI produced the PPI Videos in connection with its work as a sales representative and dealer for Defendants. The work that resulted from performance of the contract is directly related to the dispute of the contract itself.

## II.    Venue & Transfer

In order to determine whether transfer of this case is warranted, the Court must first determine whether venue in this District is proper. *See Atlantic Marine*, 134 S.Ct. at 579. Plaintiff's complaint alleges that venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391, 1400. (*See* R.1, ¶ 12.) Section 1391 governs venue of all claims brought in federal court except where venue is "otherwise provided by law." *See* 28 U.S.C. § 1391(a)-(b). Because there is no specific statute governing venue for contract disputes in diversity actions (or as here, purported-diversity actions), section 1391 governs Plaintiff LED's state law claims.

Special venue provisions relate to a specific cause of action, in the case of § 1400(a) it is copyright actions. 28 U.S.C. § 1400(a); *see also Atlantic Marine*, 134 S.Ct. at 577, n.2 ("[s]ection 1391 governs 'venue generally,' that is, in cases where a more specific venue provision does not apply. Cf., *e.g.*, § 1400 (identifying proper venue for copyright and patent suits)"); *see also Lumiere v. Mae Edna Wilder, Inc.,* 261 U.S. 174, 176, 43 S.Ct. 312, 67 L.Ed. 596 (1923); *In re LimitNone*, 551 F.3d at 575, n.1 (referring to 28 U.S.C. § 1400 as "the venue provision applicable to copyright action."); *Nu Image, Inc. v. Does 1-23, 322*, 799 F.Supp.2d 34, 43 (D.D.C. 2011) (finding § 1391 inapplicable to a case solely alleging a copyright claim). Section 1400(a) provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights … may be instituted in the district in which the defendant or his

agent resides or may be found." Thus, § 1400(a) governs Plaintiff's copyright infringement claim against Defendants.

### A. Venue for Plaintiff's State Law Claims is Proper in Illinois

Section 1391 governs a general determination of whether venue is "wrong" or "improper." *See* 28 U.S.C. § 1391. Section 1391 states:

> (b) Venue in General.— A civil action may be brought in—
>
> > (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> >
> > (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> >
> > (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b) (2006 ed., Supp. V).

In this case, venue is not proper pursuant to 28 U.S.C. § 1391(b)(1) because the Individual Defendants do not reside in Illinois. (*See* R.1, ¶¶ 4-6; R.12-2, Kaye Affidavit, ¶ 3(Florida resident); R.12-3, Gallagher Affidavit, ¶ 3(New Jersey resident); R.12-4, Lefler Affidavit, ¶ 3 (New Jersey resident).) Venue is proper for Plaintiff LED's state law claims, however, pursuant to 28 U.S.C. § 1391(b)(2). *See* 28 U.S.C. § 1391(b)(2) (venue proper in judicial district in which substantial part of events or omissions giving rise to claim occurred, or substantial part of property that is subject of action is situated).

Under section 1391(b)(2), "[t]he test is not whether a majority of the activities pertaining to the case were performed in a particular district but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *Imperial Crane Servs, Inc. v. Cloverdale Equip. Co.*, No. 13 C 04750, 2013 WL 5904527, at *3 (N.D. Ill. Nov. 4, 2013)

(citations omitted). Courts consider a number of factors in determining proper venue in a breach of contract action, including "where the conduct underlying the breach occurred and where performance under the contract was to take place," and whether there was "[f]ailure to make payment in a district pursuant to a contract." *Id*., at *3 (citations omitted).

The contract at the heart of Plaintiff's breach of contract claim was not entered into in this judicial district, but performance was to occur and did occur in this judicial district. (*See* R.1, ¶ 46 ("The Non-Exclusive Representative Agreement also provides that PPI's sales market territory shall be Illinois, Indiana, Wisconsin, Michigan, Missouri, and Minnesota …"); *see also* R.1-3, Non-Exclusive Representative Agreement, attached as Ex. C to LED's Compl, ¶ 46, ¶ 18 ("This Agreement is made and executed in the State of Florida ….").) The Additional Rep/Dealer Agreement and the Non-Exclusive Dealership Agreement also agreed to sales performance in a primary marketing area that included Illinois. (R.1, ¶¶ 47, 48; *see also* R.1-4; R.1-5.) The claims for fraud, civil conspiracy, and unjust enrichment are also based, in part, on actions by Plaintiff at Defendants' request and on interactions between the parties that occurred in various locations, including the Northern District of Illinois. (*See* R.1, ¶¶ 3, 28, 29, 37, 39, 48.) At least Defendant Aadyn and Defendant Kaye knew that Plaintiff LED, Contursi, and PPI resided in Illinois at the time of the contract and continued to do so at the time of the complaint. (*See* R.1, ¶¶ 1, 13.) The contract, therefore, contemplated performance in Illinois. *See Moran Ind., Inc. v. Higdon*, No. 07 C 6092, 2008 WL 4874114, at *5 (N.D. Ill. June 26, 2008) (citations omitted) (considering where performance under the contract was to take place in determining venue under § 1391(b)(2)).

Plaintiff LED also alleges that performance of acts and omissions under the agreements occurred in Illinois, including in the Northern District of Illinois (Chicago, Illinois). In

particular, Defendant Kaye visited Chicago to conduct a site visit of PPI to verify compliance with PPI's obligations as a distributor. (*See* R.12-2, ¶ 10.) Upon Defendant Aadyn's request, Contursi created vinyl signs and built a light box in Chicago. (*See* R.1, ¶¶ 28-29.) Additional allegations show that at Aadyn's request, Contursi attended the Fire-Rescue International event in Chicago where he met with Defendant Gallagher who allegedly misrepresented to Contursi that "[w]hen Aadyn turns a profit, those who have worked will get paid." (*See* R.1, ¶ 37.) Defendants failed to make payments to Plaintiff LED (and to Contursi and PPI) all located in the Northern District of Illinois. (*See* R.1, ¶¶ 45, 53.) The Defendants' actions and interactions with Plaintiff and Defendants' alleged failures constitute a substantial part of the events or omissions giving rise to Plaintiff LED's breach of contract claim. Thus, based on the facts as alleged, venue exists in this District with respect to Plaintiff LED's state law claims pursuant to § 1391(b)(2). *See Villalobos v. Castaneda*, No. 12 C 8218, 2013 WL 5433795, at *7 (N.D. Ill. Sept. 27, 2013) (citing *Caldera Pharms., Inc. v. Los Alamos Nat'l Sec., LLC,* 844 F.Supp.2d 926, 929 (N.D. Ill. 2012) ("For venue to be proper under § 1391(b)(2), a majority of the events giving rise to the claim need not occur in the venue, only a substantial part").

**B. Transfer to Southern District of Florida of Plaintiff's State Law Claims is Warranted Under 28 U.S.C. § 1404(a)**

Because venue is proper in the Northern District of Illinois under § 1391, which governs venue for Plaintiff's state law claims, the Court cannot dismiss those claims under Rule 12(b)(3), and instead treats Defendants' request for enforcement of the forum selection clause as one for transfer under 28 U.S.C. § 1404(a). *See Atlantic Marine*, 134 S.Ct. at 579. Courts may enforce a forum selection clause under section 1404(a) because the clause does not render venue in the originating court "wrong" or "improper" within the meaning of 28 U.S.C. § 1406(a) or Rule 12(b)(3). *See id.*, 134 S.Ct. at 579 (explaining that "whether the parties entered into a

forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b). As a result, a case filed in a district that falls within § 1391 may not be dismissed under … Rule 12(b)(3)").

Section 1404(a) states: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see also Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1098 (7th Cir. 2008) (explaining that district courts have discretion to transfer a case pursuant to § 1404(a)); *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973 (7th Cir. 2010) (citations omitted) (recognizing that section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to [a] '… case-by-case consideration of convenience and fairness'").

In *Atlantic Marine*, the Supreme Court found that section 1404(a) "permits transfer to any district where venue is also proper (*i.e.*, 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine*, 134 S.Ct. at 579. The "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S.Ct. 2239, 2246, 101 L.Ed.2d 22 (1988) (Kennedy, J., concurring); *see also Atlantic Marine*, 134 S.Ct. at 579 (citations omitted) (explaining that the analysis under § 1404(a) "'calls on the district court to weigh in the balance a number of case-specific factors' and that the 'presence of a forum-selection clause … will be a significant factor that figures centrally in the district court's calculus'").

Since *Atlantic Marine*, the Seventh Circuit has continued to treat forum selection clauses as important and to uphold them in the same manner as other contractual provisions, stating:

> A forum selection clause "may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain."

*J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 651 (7th Cir. 2014) (quoting *Atlantic Marine*, 134 S.Ct. at 583). The Supreme Court explained that when faced with a forum selection clause, courts must make certain adjustments to the standard analysis under § 1404(a), evaluating both the convenience of the parties and various public-interest considerations. *See Atlantic Marine*, 134 S.Ct. at 581 (explaining that the calculus of §1404(a) changes "when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum'"). The analysis changes in three ways: (1) the plaintiff's choice of forum merits no weight; (2) private-interest factors are given no weight as the court is only to consider public-interest factors; and (3) a § 1404(a) transfer based on a forum selection clause will not carry with it the original venue's choice-of-law rules. *See id.,* 134 S.Ct. at 581-83.

As applied to the facts here, Plaintiff LED's choice of the Northern District of Illinois merits no weight. *See id.*, 134 S.Ct. at 581. In addition, the Court also gives no weight to private interest factors argued by Plaintiff LED. *See id.*, 134 S.Ct. at 582. The public interest factors "will rarely defeat a transfer motion" as "forum-selection clauses should control except in unusual cases." *See id.* The Court finds no public interest factors present here that counsel against enforcement of the forum selection clause. Lastly, in this case, because the Court enforces the forum selection clause via a § 1404(a) transfer, the choice of law provisions applicable to the Northern District of Illinois will not follow this case to the Southern District of

Florida.  *See Atlantic Marine*, 134 S.Ct. at 582-83.  This is especially relevant here where choice

of law provisions selecting Florida law exist in all the agreements at issue.  (*See* R.1-3,

Non-Exclusive Representative Agreement, at 3 ("This Agreement is made and executed in the

State of Florida and shall be construed under the laws thereof"); R.1-4, Additional Rep/Dealer

Agreement, at 2 ("[A]nd the governing law shall be construed and enforced in accordance with

the laws of the state of Florida"); R.1-5, Non-Exclusive Dealership Agreement, at 5 ("Governing

Law.  This Agreement shall be construed and enforced in accordance with the laws of the state of

Florida").)

   Accordingly, the Court transfers Plaintiff LED's state law claims pursuant to 28 U.S.C.

§ 1404(a).

   **C. Venue & Transfer of Plaintiff's Copyright Claim to the Southern District of Florida**

   Whether venue is proper for Plaintiff's copyright claim is irrelevant to the Court's

ultimate determination of whether to transfer this case to the Southern District of Florida,

because under either scenario the statutes warrant a transfer.  *See* 28 U.S.C.  §§ 1404(a), 1406.  If

Plaintiff's copyright claim is properly venued, the Court, for the same reasons as those provided

above, would enforce the valid forum selection clause and transfer the claims pursuant to

§ 1404(a).  If Plaintiff's copyright claim is improperly venued, the Court would still transfer the

claims pursuant to § 1406, as described below.

   Section 1406 provides for the transfer of the copyright claim.  *See United Financial*

*Mortg. Corp. v. Bayshores Funding Corp.*, 245 F.Supp.2d 885, 896 (N.D. Ill. 2002).  The Court

may, "if it be in the interest of justice, transfer such case to any district or division in which it

could have been brought."  28 U.S.C. § 1406(a); *see also Cote v. Wadel,* 796 F.2d 981, 985 (7th

Cir. 1986) ("Under either section [(28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a))], the district

court has broad discretion to grant or deny a motion to transfer the case"). Venue in this case properly lies in Florida as it is the location where the parties entered into the contract and where the parties agreed resolution of disputes regarding the contract and their relationship would occur. (*See* R.1, ¶ 46; R.1-3, ¶ 18.) In addition, Defendant Aadyn had its principal place of business in Florida at the time of the contract and still maintains a presence in Florida. (*See* R.1-3, Non-Exclusive Representative Agreement (noting Aadyn's principal place of business in Fort Lauderdale, Florida); R.1-7, Aadyn's Website, attached to Compl. as Ex. G, ¶ 52 (listing Dealers-Representatives in Florida).) Defendant Kaye, Aadyn's Chief Operating Officer, also resides in Florida. (R.1, ¶ 5; R.12-2, ¶ 3.) The allegations also support that Florida will have personal jurisdiction over each of the Individual Defendants and Defendant Aadyn based on the choice-of-law provision in the agreements. Each of the agreements between Aadyn and Plaintiff LED, Contursi, and PPI include choice-of-law provisions indicating Florida. (*See* R.1-3, ¶ 18; R.1-4, at 2; R.1-5, at 5, ¶ 23.) While a choice-of-law provision alone does not support a finding of personal jurisdiction, it can support a finding of personal jurisdiction where other contacts with the forum state are present because it tends to show that a party purposefully availed itself of that state's laws. *See Burger King*, 471 U.S. at 482.

In addition, because Plaintiff's complaint alleges copyright infringement and this claim is subject to a statute of limitations, the Court finds that justice is better served at this stage by a transfer of the case rather than a dismissal of the claims. *See* 17 U.S.C. § 507(b) (providing that all civil actions brought under the Copyright Act must be brought "within three years after the claim accrued"). As such, based on the interests of justice, the Court also transfers the copyright infringement claim to the Southern District of Florida.

## CONCLUSION

For the reasons stated above, the Court grants-in-part Defendants' motion and orders this case be transferred in its entirety to the Southern District of Florida. The Court denies the remaining aspects of Defendants' motion without prejudice.

**DATED:  November 21, 2014**

ENTERED

AMY J. ST. EVE
United States District Court Judge